UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**CRAIG CUNNINGHAM,** on behalf of himself and all
others similarly situated**,**

                         Plaintiff,                              **3:18 cv 897 (VAB)**

          -vs.-

**MEDGUARD ALERT, INC.,**

                    Defendant.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND STRIKE**

BELLIN & ASSOCIATES LLC
Aytan Y. Bellin, Esq. (ct28454)
50 Main Street, Suite 1000
White Plains, New York 10606
Tel.: (914) 358-5345
Fax: (212) 571-0284
Email: aytan.bellin@bellinlaw.com

*Attorneys for Plaintiff and the Proposed Class*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................ 1

SUMMARY OF ARGUMENT .............................................................................................. 1

THE ALLEGATIONS IN THE COMPLAINT........................................................................ 2

ARGUMENT ....................................................................................................................... 4

I.      CUNNINGHAM HAS STANDING TO REPRESENT A CLASS OF PERSONS
        THAT INCLUDES PERSONS TO WHOSE RESIDENTIAL PHONES
        MEDGUARD MADE PRERECORDED OR ARTIFICIAL VOICE
        ADVERTISING CALLS……………………………………………………………………….4

II.     MEDGUARD'S CHALLENGE TO CUNNNIGHAM'S TYPICALITY IN THIS
        CASE IS PREMATURE AND, IN ANY EVENT, IS MERTILESS……………………..8

III.    IN THE UNLIKELY EVENT THAT THIS COURT WERE TO DETERMINE
        THAT CUNNINGHAM COULD NOT REPRESENT PERSONS TO WHOSE
        RESIDENTIAL PHONES MEDGUARD MADE PRERECORDED OR
        ARTIFICIAL VOICE ADVERTISING CALLS, THIS COURT COULD
        MODIFY THE PROPOSED CLASS TO EXCLUDE THOSE PERSONS AND
        CERTIFY A CLASS CONSISTING ONLY OF PERSONS TO WHOSE CELL
        PHONES MEDGUARD MADE THESE CALLS……………………………………….13

CONCLUSION.................................................................................................................... 15

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Calibuso v. Bank of America Corp.*,
    893 F. Supp.2d 374 (E.D.N.Y. 2012) ......................................................................9

*Caridad v. Metro North Commuter Railroad*,
    191 F.3d 283 (2d Cir. 1999), *overruled on other grounds*, *In re Initial Public
    Offerings Securities Litig.*, 471 F.3d 24 (2d Cir. 2006) ....................................10, 11

*Chateau de Ville Productions, Inc. v. Tams-Witmark Music Library, Inc.*,
    586 F.2d 962 (2d Cir. 1978)...............................................................................14

*Chen-Oster v. Goldman Sachs & Co.*,
    325 F.R.D. 55 (S.D.N.Y. 2018) .......................................................................9, 12

*Chen-Oster v. Goldman Sachs & Co.*,
    877 F. Supp.2d 113 (S.D.N.Y. 2012).....................................................................9

*Garcia v. Pancho Villa's of Huntington Village, Inc.*,
    281 F.R.D. 100 (E.D.N.Y. 2011) .......................................................................11

*Gratz v. Bollinger*,
    539 U.S. 244 (2003).............................................................................................6

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968)................................................................................10

*Harris v. Navient Solutions, LLC*,
    No. 3:15 cv 564, 2018 WL 3748155 (D. Conn. Aug. 7, 2018) ...............................11

*Johnson v. Nextel Communications, Inc.*,
    780 F.3d 128 (2d Cir. 2015)................................................................................12

*Kassman v. KPMG, LLP*,
    925 F. Supp.2d 453 (S.D.N.Y. 2013)..................................................................8, 9

*Koss v. Wackenhut*,
    No. 03 cv 7679, 2009 WL 928087 (S.D.N.Y. Mar. 30, 2009) ...............................14

*Landers v. Leavitt*,
    232 F.R.D. 42 (D. Conn. 2005)...........................................................................11

i

*Langan v. Johnson & Johnson Consumer Companies, Inc.*,
  897 F.3d 88 (2d Cir. 2018).......................................................................................... *passim*

*Lefoll v. Key Hyundai of Manchester, LLC*,
  2010 WL 1840220 (D. Conn. May 6, 2010)......................................................10

*Levy v. Receivables Performance Management, LLC*,
  972 F. Supp.2d 409 (E.D.N.Y. 2013) ...................................................................11

*Mahon v. Ticor Title Ins. Co.*,
  683 F.3d 59 (2d Cir. 2012)........................................................................5, 6, 7

*Moore v. PaineWebber, Inc.*,
  306 F.3d 1247 (2d Cir. 2002)...................................................................2, 12

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
  693 F.3d 145 (2d Cir. 2012)......................................................................5

*Parker v. Time Warner Entertainment Co.*,
  331 F.3d 13 (2d Cir. 2003).......................................................................14

*Petrolito v. Arrow Financial Services¸ LLC*,
  221 F.R.D. 303 (D. Conn. 2004).............................................................11

*Reynolds v. Lifewatch, Inc.*,
  136 F. Supp.3d 503 (S.D.N.Y. 2015)........................................................8

*Robidoux v. Celani*,
  987 F.3d 931 (2d Cir. 1993).....................................................................10

*Rossini v. Ogilvy & Mather, Inc.*,
  798 F.2d 590 (2d Cir. 1986).....................................................................10

*Santiago v. Merriman River Associates, LLC*,
  No. 3:17 cv 2054, 2018 WL 2465358 (D. Conn. Jun. 1, 2018)....................8, 9, 14

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016)............................................................................13

*In re Visa Check/MasterMoney Antitrust Litig.*,
  280 F.3d 124 (2d Cir. 2002), *overruled on other grounds*, *In re Initial Public
  Offerings Securities Litig.*, 471 F.3d 24 (2d Cir. 2006) ...........................12

*Woe by Woe v. Cuomo*,
  729 F.2d 96 (2d Cir.), *cert. denied*, 469 U.S. 936 (1984)................................13, 14

**Statutes**

47 U.S.C. § 227 .............................................................................................1

47 U.S.C. § 227(a)(1)(iii) ................................................................................................6

47 U.S.C. § 227(b) ......................................................................................................6, 11

47 U.S.C. § 227(b)(3) .......................................................................................................11

**Other Authorities**

47 C.F.R. §§ 64.1200(a)(1)(iii) .........................................................................................6

47 C.F.R. §§ 64.1200(a)(2) ...........................................................................................6,11

47 C.F.R. § 64.1200(a)(3)(iii) ......................................................................................6, 11

Fed. R. Civ. P. 12(b)(6) ................................................................................................1, 8

Fed. R. Civ. P. 12(f) ....................................................................................................1, 8

Fed. R. Civ. P. 23 ................................................................................................... *passim*

Fed. R. Civ. P. 23(b)(3) ...............................................................................................6, 12

U.S. Const., Art. III ......................................................................................................6, 7

## PRELIMINARY STATEMENT

Plaintiff Craig Cunningham ("Cunningham") submits this memorandum of law in opposition to a motion to dismiss and strike of Defendant Medguard Alert, Inc. ("Medguard"). In that motion, Medguard argues that because it made a prerecorded or artificial voice advertising call to Cunningham's *cell* phone (1) Cunningham does not have standing to represent a class of persons that includes persons to whose *residential* phones Medguard made identical or substantially similar calls; and (2) Cunningham may not serve as a class representative for such a class due to his lack of typicality under Rule 23.  For the reasons that follow, none of Medguard's arguments has any merit, and Medguard's motion to dismiss and strike should be denied in its entirety.

## SUMMARY OF ARGUMENT

Although Medguard made a prerecorded or artificial voice call to Cunningham's *cell* phone in violation of the TCPA (47 U.S.C. § 227 and the regulations promulgated thereunder), Cunningham has standing to represent a class of persons that includes persons to whose *residential* phones Medguard made identical or substantially similar calls.  That is because the Second Circuit has held that as long as a plaintiff has been injured by a defendant's action, "non-identical injuries of the same general character can support [the plaintiff's class] standing." *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 92-96 & n.3 (2d Cir. 2018).

Moreover, Medguard's motion to strike Cunningham's class allegations on behalf of persons to whose residential phones Medguard made the above-described calls is meritless. Because this Court issued its Scheduling Order on August 13, 2018, Doc. No. 19, discovery is just beginning, and therefore, Medguard's motion to strike for lack of typicality is premature and

1

should be denied on this basis alone.

Furthermore, to prevail on a motion to strike class allegations, a defendant must demonstrate from the face of the complaint that it would be *impossible* to certify the alleged class, and the defendant must do so on a basis separate and apart from the issues that will be decided on a class certification motion.  Here, Medguard's arguments regarding Cunningham's typicality are not separate and apart from the issues that will be decided on a class certification motion.  That is another independent reason to deny Medguard's motion to strike.

Moreover, because the Complaint itself alleges that Cunningham and the proposed class share numerous issues of fact and law, Cunningham's satisfies Rule 23's typicality requirement. The fact that Cunningham will have to show that Medguard made the call to his cellular phone while some of the members of the class will have to show that Medguard made the calls to their residential phones, goes to the issue of predominance, not typicality, and does not render Cunningham an inappropriate class representative.  That is because Rule 23's predominance requirement is met "if resolution of *some* of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002) (emphasis added).  Nothing on the face of the Complaint shows that it will be impossible for Cunningham to satisfy the requirements of typicality and predominance.  Accordingly, Medguard's motion to strike on this basis should be denied.

## THE ALLEGATIONS IN THE COMPLAINT

On May 11, 2018, Medguard, without Cunningham's prior express written consent, made, initiated and/or caused to be initiated a telephone call to Cunningham's cellular telephone number,

and delivered the following message with a prerecorded or artificial voice: "Hi.  This is Todd with the fulfillment department.  Your wellness package is ready to be shipped.  Please press 1 and hold the line to receive a medical alert system.  One out of every three Americans that are over 65 fall every year in the U.S., and that fall may be the last.  Don't be a statistic.  Press 1 now to receive a medical alarm pack (unintelligible) no cost."  Doc. No. 1 at 3, ¶ 11.

Cunningham pressed 1, and in an attempt to identify the company that made the call, Cunningham ordered a medical alert system.  From subsequent conversations with persons who confirmed Cunningham's order, Cunningham, learned that the company that made the above-described call to him was Medguard.  *Id.* at 3-4, ¶ 12. In addition, Cunningham learned from Medguard's representative that as part of the Cunningham's order for the medical alert system, Cunningham would have to agree to pay $29.95 a month to Medguard for Medguard's services in monitoring of communication from the medical alert device.  *Id.* at 4, ¶ 13.

Prior to receiving the above-described prerecorded or artificial voice telephone call from Medguard, Cunningham had never ordered any of Defendant's products or services.  *Id.* at 4, ¶ 14. Cunningham suffered concrete harm as a result of the above telephone call in that the telephone call tied up Plaintiff's telephone line, invaded Plaintiff's privacy, used up energy from Plaintiff cell phone battery, and wasted Plaintiff's time.  *Id.* at 4, ¶ 15.

From May 29, 2014 through May 29, 2018, Medguard initiated and/or caused to be initiated thousands of telephone calls to cellular and residential telephones of thousands persons throughout the United States, without having received prior express written consent from the called parties, that included or introduced prerecorded or artificial voice messages that were identical or substantially similar to the prerecorded or artificial voice message described above that Medguard communicated to Cunningham.  *Id.* at 4, ¶ 16.

On May 29, 2018, Cunningham brought this class action Complaint against Medguard for

3

Medguard's violation of the TCPA through Medguard's above-described phone calls to Cunningham and a class of persons (the "proposed class"). Doc. No. 1 at 8, ¶¶ 30-33. The proposed class Cunningham seeks to represent is defined as follows: All persons in the United States, from May 29, 2014 through May 29, 2018, to whom Medguard initiated and/or caused to be initiated any calls to the persons' cellular telephones or residential telephones, that delivered a prerecorded or artificial voice message identical or substantially similar to the prerecorded or artificial voice message described above that Medguard delivered to Cunningham. *Id.* at 4-5, ¶ 19.

On behalf of himself and the proposed class, Cunningham seeks statutory damages and injunctive relief against Medguard. *Id.* at 8-9, at 8, ¶¶ 30-33; Prayer for Relief.

## ARGUMENT

I. **CUNNINGHAM HAS STANDING TO REPRESENT A CLASS OF PERSONS THAT INCLUDES PERSONS TO WHOSE RESIDENTIAL PHONES MEDGUARD MADE PRERECORDED OR ARTIFICIAL VOICE ADVERTISING CALLS.**

Medguard maintains that because its prerecorded or artificial voice advertising call to Cunningham was made to his cell phone, Cunningham does not have standing to represent a class that includes persons to whose residential phones Medguard made the identical or substantially similar calls. Medguard's argument is meritless.

Recently, the Second Circuit reaffirmed that "non-identical injuries of the same general character can support [class] standing." *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 94 (2d Cir. 2018). The Court recognized that

> [c]lass actions under Rule 23 of the Federal Rules of Civil Procedure are an exception to the general rule that one person cannot litigate injuries on behalf of another. Through Rule 23, Congress has authorized plaintiffs to bring, under limited circumstances, a suit in federal court on behalf of, not just themselves, but others who were similarly injured. Such suits result in efficiencies of cost, time,

4

> and judicial resources and permit a collective recovery where obtaining individual judgments might not be economically feasible. Although a named class action plaintiff has not actually suffered the injuries suffered by her putative class members (and therefore would not normally have standing to bring those suits), Congress has said that the fact that the parties possess the same interest and suffer[ed] the same injury gives the named plaintiff a sufficient stake in the outcome of her putative class members' cases.

*Langan*, 897 F.3d at 93-94 (internal citations and internal quotation marks omitted).

In *Langan*, the Second Circuit pointed out that it had previously held that "the claims of putative class members are too dissimilar to support standing against a particular defendant when that defendant did not actually injure a named plaintiff." *Id.* at 94 (citing *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012)). *Langan* stated that the Court so held in *Mahon* because "'with respect to each asserted claim' against each defendant, 'a plaintiff must always have suffered a distinct and palpable injury to herself.'" *Id.* (quoting *Mahon*, 683 F.3d at 64).

On the other hand, the Second Circuit pointed out that it had also previously held that a plaintiff who purchased mortgage-backed certificates had standing to represent class including certificate holders outside the specific tranche from which the plaintiff purchased certificates, even though the certificates from each tranche varied in their payout priority. *Id.* at 94-95 (citing *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 164 (2d Cir. 2012)). The Court stated that it had so held in *NECA* because "these different payment priorities did not render a certificate holder who would be paid sooner incapable of representing a certificate holder who would be paid later, or vice versa, because all certificate holders had the same necessary stake in

litigating whether [the] lenders ... abandoned their responsibilities to follow underwriting guidelines." *Id.* (internal quotation marks omitted)

In *Langan* itself, the Second Circuit faced the question of "whether there is a standing problem when a plaintiff attempts to sue on behalf of those who may have claims under different states' laws that generally prohibit the same conduct." *Id.* at 95. The Second Circuit concluded that that question is a "question[] of predominance under Rule 23(b)(3), rather than standing under Article III. . . ." *Id.* The Court reasoned that "[s]ince class action plaintiffs are not required to have individual standing to press any of the claims belonging to their unnamed class members, it makes little sense to dismiss the state law claims of unnamed class members for want of standing when there was no requirement that the named plaintiffs have individual standing to bring those claims in the first place." *Id.* The Court also pointed out that its "approach also accords with the Supreme Court's preference for dealing with modest variations between class members' claims as substantive questions, not jurisdictional ones." *Id.* (citing *Gratz v. Bollinger*, 539 U.S. 244, 266 (2003)).

This case is controlled by *Langan* and *NECA*, not *Mahon*.  The question here is whether Cunningham — who is suing Medguard for making prerecorded or artificial voice advertising calls to Cunningham's cell phone in violation of 47 U.S.C. § 227(a)(1)(iii) and 47 C.F.R. §§ 64.1200(a)(1)(iii), (2) — may represent a class of persons that includes persons who claim that Medguard made identical or substantially similar prerecorded or artificial voice advertising calls to their residential phones in violation of 47 U.S.C. § 227(b) and 47 C.F.R. §  64.1200(a)(3)(iii).  As discussed in more detail in Point II, Cunningham and each proposed class member received identical or substantially

similar prerecorded or artificial voice advertising calls from Medguard that caused them the same injuries of invasion of privacy, occupation of their phone lines, waste of time and annoyance. Doc. No. 1 at 4 ¶ 15.  Thus, unlike the plaintiff in *Mahon*, Cunningham was injured by, and has individual standing to sue, the defendant who caused injury to the proposed class members — Medguard.  Accordingly, *Mahon* is inapposite. *See Langan*, 897 F.3d at 96 n.3 (distinguishing *Mahon* because (1) "*Mahon*'s rejection of 'analyz[ing] class certification before Article III standing' only requires that a district court first determine that the party plaintiff was actually injured by each of the named defendants before proceeding to the Rule 23 inquiry"; and (2) "the redressability and fundamental fairness concerns that arise when a plaintiff attempts to haul a non-injurious defendant into court are not present when a plaintiff initiates a class action under various state laws prohibiting similar conduct by the same defendant. . . ." [internal citations omitted]).

Like the plaintiffs in *Langan* and *NECA*, the question here is not one of standing, but whether the difference between Cunningham's claim and the claims of some of the members of the purported class — Cunningham having been called by Medguard on his cell phone while some of the purported class members having been called by Medguard on their residential phones —destroys predominance.  As will be discussed below, any challenges to predominance now, when discovery has just begun, would be premature and would, in any event, fail.

In sum, under the reasoning of *Langan* and *NECA*, Cunningham has standing to represent members of the purported class to whose residential phones Medguard made prerecorded or artificial advertising calls that were identical or substantially similar to the call Medguard made to Cunningham's cell phone.  Accordingly, Medguard's contention that Cunningham lacks

standing to represent these purported class members is meritless, and its motion to dismiss for lack of standing should be denied.

## II.    MEDGUARD'S CHALLENGE TO CUNNNIGHAM'S TYPICALITY IN THIS CASE IS PREMATURE AND, IN ANY EVENT, IS MERTILESS

Medguard maintains that because the Complaint alleges that Medguard made a prerecorded or artificial voice advertising call to Cunningham's cell phone, Cunningham's claim is not, as a matter of law, typical of claims of proposed class members to whose residential phones Medguard made identical or substantially similar calls.  Accordingly, Medguard has moved under Rule 12(f) to strike that portion of Cunningham's Complaint that alleges that Cunningham may represent these proposed class members.  Medguard's argument is meritless.

Under well-settled law, "[m]otions to strike are generally disfavored and more so when they [are] related to class allegations."  *Santiago v. Merriman River Associates, LLC*, No. 3:17 cv 2054, 2018 WL 2465358, at *7 (D. Conn. Jun. 1, 2018) (Bolden, J.).  *Accord, e.g.*, *Kassman v. KPMG, LLP*, 925 F. Supp.2d 453, 463 (S.D.N.Y. 2013).  That is "because [a motion to strike class allegations] requires a reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Kassman,* 925 F. Supp.2d at 462 (internal quotation marks omitted and citing cases)*.* To prevail on such a motion, a defendant must "demonstrate from the face of the [c]omplaint that it would be *impossible* to certify the alleged class," *Reynolds v. Lifewatch, Inc.*, 136 F. Supp.3d 503, 511 (S.D.N.Y. 2015) (emphasis added), and the defendant must do so on a basis "separate and apart from the issues that will be decided on a class certification motion," *Calibuso v. Bank of America Corp.*, 893 F. Supp.2d 374, 383 (E.D.N.Y. 2012).  *Accord Kassman*, 925 F. Supp.2d at 463 (a motion to strike class certification prior to the

close of discovery may only "be entertained if the inquiry would not mirror the class certification inquiry and if resolution of the motion is clear."); *Santiago*, 2018 WL 2465358, at *8 (same); *Chen-Oster v. Goldman Sachs & Co.*, 877 F. Supp.2d 113, 117 (S.D.N.Y. 2012) (same).

The instant case is in its infancy and discovery is just beginning.  Accordingly, Medguard's challenge to Cunningham's typicality is premature, and should be denied on that basis alone.  *Chen-Oster*, 877 F. Supp.2d at 117; *Kassman*, 925 F. Supp.2d at 463; *Santiago*, 2018 WL 2465358, at *8.  In addition, the fact that Medguard's challenge to Cunningham's typicality is not a basis separate and apart from the issues that will be decided on a class certification motion, is another independent reason that Medguard's challenge to Cunningham's typicality must be rejected at this juncture.  *Santiago*, 2018 WL 2465358, at *8; *Kassman*, 925 F. Supp.2d at 463.

 Moreover, contrary to Medguard's arguments, nothing on the face of the Complaint shows that it would be impossible for Cunningham to demonstrate that his claim is typical of a class that includes persons to whose residential phones Medguard made identical or substantially similar prerecorded or artificial voice advertising calls.  Under Rule 23, "[t]ypicality is satisfied when the lead plaintiffs' claims arise from the same series of events and find support in the same legal theories as the claims of all of the remaining class members." *Chen-Oster v. Goldman Sachs & Co.*, 325 F.R.D. 55, 77 (S.D.N.Y. 2018) (internal quotation marks omitted).  Typicality "does not require that the factual background of each named plaintiff's claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Caridad v. Metro North Commuter Railroad*, 191 F.3d 283, 293 (2d Cir. 1999) ("the question of whether Metro–North's system-wide [disciplinary system] has resulted in a

9

pattern and practice of discrimination or affects African–Americans more severely than other employees is central to the[] [named plaintiffs''] claims, and  therefore, "[t]he fact that two of the named plaintiffs admitted that they had committed the infractions giving rise to the challenged disciplinary actions does not defeat typicality"), *overruled on other grounds*, *In re Initial Public Offerings Securities Litig.*, 471 F.3d 24 (2d Cir. 2006).  *Accord, e.g.,  Robidoux v. Celani*, 987 F.3d 931, 936-937 (2d Cir. 1993) ("When it is alleged that the same unlawful conduct was directed at or affected both the named Plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patters underlying the individual claims."); *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 596-600 (2d Cir. 1986) (holding proposed class representative who claimed that she was denied a transfer due to gender discrimination was proper class representative of class of persons that included claims of gender discrimination in promotion and training, because the common claim of the class was the same type of gender discrimination); *Green v. Wolf Corp.*, 406 F.2d 291, 299 (2d Cir. 1968) (even though three different prospectuses were at issue, the plaintiff's claims regarding the prospectus he reviewed were typical of the claims of the class members who had reviewed the other two prospectuses because each prospectus contained the same misstatements and omissions); *Lefoll v. Key Hyundai of Manchester, LLC*,  2010 WL 1840220, *3 (D. Conn. May 6, 2010) (even if details of underlying loan contracts at issue might differ among the class members, typicality was satisfied because "[the proposed class plaintiff] and the individual class members would make analogous arguments to [prove] their claims under TILA").[1]

---

[1] *See also Garcia v. Pancho Villa's of Huntington Village, Inc.*, 281 F.R.D. 100, 106-107 (E.D.N.Y. 2011)(holding proposed class representative's claim typical because she was subject to the same general employment scheme as the class, even though the underlying details of her case differed from those of other class members); *Landers v. Leavitt*, 232 F.R.D. 42, 47 (D. Conn. 2005)(citing *Caridad*, and holding class appropriate because the policy at issue affected

In this case, Cunningham's claim is typical of that of the proposed class.  Both
Cunningham and the proposed class will have to prove that Medguard made a prerecorded or
artificial voice call to them within the last four years, and that those prerecorded or artificial
voice calls "include[d] or introduce[d] an advertisement."   47 U.S.C. § 227(a)(1)(iii), (b); 47
C.F.R. § 64.1200(a)(2), (3)(iii).  Moreover, both Cunningham and the class will need to prove
that Medguard made these calls willfully or knowingly in order to obtain treble statutory
damages.  47 U.S.C. § 227(b)(3).  In addition, both Cunningham and the Class have suffered
similar injuries as a result of Medguard's calls to them — occupation of their phone lines,
invasion of privacy, waste of time and annoyance.  Furthermore, although prior express consent
is an affirmative defense under the TCPA on which Medguard will have the burden of proof,
*e.g., Harris v. Navient Solutions, LLC*, No. 3:15 cv 564, 2018 WL 3748155, at *1 (D. Conn.
Aug. 7, 2018); *Levy v. Receivables Performance Management, LLC* , 972 F. Supp.2d 409, 417
(E.D.N.Y. 2013), that issue of law will occupy "essentially the same degree of centrality to
[Cunningham's] claim as to that of other members of the proposed class" should Medguard
choose to assert that affirmative defense.  *Caridad*, 191 F.3d at 293

The fact that Cunningham will have to show that Medguard made the call to his cellular
phone while some of the members of the class will have to show that Medguard made the calls to
their residential phones, goes to the issue of predominance, not typicality, and does not render
Cunningham an inappropriate class representative.  That is because Rule 23's predominance
requirement is met "if resolution of *some* of the legal or factual questions that qualify each class
member's case as a genuine controversy can be achieved through generalized proof, and if these

---

all class members the same way even though the factual details of the class members' underlying
claims differed); *Petrolito v. Arrow Financial Services¸ LLC*, 221 F.R.D. 303, 309-310 (D.
Conn. 2004)(same).

particular issues are more substantial than the issues subject only to individualized proof."

*Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002) (emphasis added).  *Accord,*

*e.g., Langan*, 897 F.3d at 97.  "The predominance requirement calls only for predominance, not

exclusivity of common questions."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d

124, 140 (2d Cir. 2002) (internal quotation marks omitted), *overruled on other grounds*, *In re*

*Initial Public Offerings Securities Litig.*, 471 F.3d 24 (2d Cir. 2006). *Accord, e.g., Chen Oster*,

325 F.R.D. at 80.

      "A court examining predominance must assess (1) the elements of the claims and

defenses to be litigated; and (2) whether generalized evidence could be offered to prove those

elements on a class-wide basis or whether individualized proof will be needed to establish each

class member's entitlement to relief.  Predominance requires a further inquiry, however, into

whether the common issues can profitably be tried on a classwide basis, or whether they will be

overwhelmed by individual issues.  Ultimately, the court must decide whether classwide

resolution would substantially advance the case, examining whether certification will reduce the

range of issues in dispute and promote judicial economy."  *Johnson v. Nextel Communications,*

*Inc.*, 780 F.3d 128, 138 (2d Cir. 2015) (internal quotation marks and citations omitted). "When

one or more of the central issues in the action are common to the class and can be said to

predominate, the action may be considered proper under Rule 23(b)(3) even though other

important matters will have to be tried separately, such as damages or some affirmative defenses

peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036,

1045 (2016) (internal quotation marks omitted).

      As discussed above, there are multiples issues of fact and law that are typical of

Cunningham and the class members to whose residential phones Medguard made a prerecorded

or artificial voice advertising call.  Nothing on the face of the Complaint shows that it will be impossible for Cunningham to satisfy the requirements of typicality and predominance. Certainly, before discovery has even begun, the fact that Cunningham was called by Medguard on his cell phone while some of the members of the proposed class were called by Medguard on their residential phones is not sufficient, as a matter of law, to show that Cunningham's claims are not typical of the claims of all of the proposed class members or that the common issues of law and fact shared by Cunningham and the proposed class members do not predominate. Accordingly, Medguard's motion to strike from the class any members to whose residential telephones Medguard made prerecorded or artificial voice advertising calls must be denied. [2]

**III.    IN THE UNLIKELY EVENT THAT THIS COURT WERE TO DETERMINE THAT CUNNINGHAM COULD NOT REPRESENT PERSONS TO WHOSE RESIDENTIAL PHONES MEDGUARD MADE PRERECORDED OR ARTIFICIAL VOICE ADVERTISING CALLS, THIS COURT COULD MODIFY THE PROPOSED CLASS TO EXCLUDE THOSE PERSONS AND CERTIFY A CLASS CONSISTING ONLY OF PERSONS TO WHOSE CELL PHONES MEDGUARD MADE THESE CALLS**

The Second Circuit has long instructed that "a district court [should] view a class action liberally in the early stages of litigation, since the class can always be modified or subdivided as issues are refined for trial."  *Woe by Woe v. Cuomo*, 729 F.2d 96, 107 (2d Cir.), *cert. denied*, 469

_____

[2] Defendant's reliance on the *ipse dixit*, outlier holding in *Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc.*, 264 F.R.D. 229, 236 (N.D. Ill. 2011) — that a plaintiff who received a prerecorded call on his residential phone did not have a claim that was typical of the claims of class of persons who received such calls on their cell phones because the plaintiff's claim relied on different legal theories and was subject to different defenses — is misplaced for four reasons.  First, *Vigus* was decided on a motion for class certification after discovery, while in this case discovery has just begun.  Second, as discussed above, Cunningham and persons to whose residential phones Medguard made prerecorded or artificial voice advertising calls share numerous issues of fact and law.  Third, *Vigus's* holding is inconsistent with the Second Circuit's tests for typicality and commonality also discussed above.  Fourth, nothing on the face of the Complaint shows that it is impossible for Cunningham to prove typicality and predominance in this case.

U.S. 936 (1984). *Accord, e.g., Santiago*, 2018 WL 2465358, at * 7; *Koss v. Wackenhut*, No. 03 cv 7679, 2009 WL 928087, at *2 (S.D.N.Y. Mar. 30, 2009). Dismissing a class action on the pleadings before class discovery has been taken from Medguard would be "an extreme step . . . where a potentially proper class exists and can easily be created." *Woe*, 729 F.2d at 107 (internal quotation marks omitted); *Parker v. Time Warner Entertainment Co.*, 331 F.3d 13, 20-22 (2d Cir. 2003) (vacating denial of class certification on the pleadings because district court had not given plaintiffs opportunity to conduct class discovery or make a motion for class certification); *Chateau de Ville Productions, Inc. v. Tams-Witmark Music Library, Inc.*, 586 F.2d 962, 966 (2d Cir. 1978) (reversing district court's ruling on class certification because the district court did not allow for sufficient discovery).

If this Court were to determine that Cunningham could not represent persons to whose residential phones Medguard made prerecorded or artificial voice advertising calls, there would be no basis to dismiss all of the class allegations in this case.  Under the case law described above, this Court could modify the proposed class definition to exclude those persons and certify a class consisting only of persons to whose cell phones Medguard made such calls.[3]

---

[3] Because Cunningham has not claimed that Medguard made a prerecorded or artificial voice call to his residential telephone line, Medguard's motion to dismiss that non-existent individual claim should be denied.

## **CONCLUSION**

For the reasons stated above, Medguard's motion to dismiss should be denied in its

entirety.

Dated: White Plains, New York
        August 22, 2018

                                        Respectfully submitted,

                                        BELLIN & ASSOCIATES LLC


                                        /s/ Aytan Y. Bellin
                                        By: Aytan Y. Bellin, Esq. (ct28454)
                                        50 Main Street, Suite 1000
                                        White Plains, New York 10606
                                        (914) 358-5345
                                        aytan.bellin@bellinlaw.com

                                        *Attorneys for Plaintiff and the*
                                        *Proposed Classes*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 22, 2018.

DATED: August 22, 2018

/s/ Aytan Y. Bellin
Aytan Y. Bellin, Esq.