UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CRAIG CUNNINGHAM, on behalf of himself and all others similarly situated,<br>　　　　Plaintiffs,<br>　vs.<br><br>MEDGUARD ALERT, INC.<br>　　　　Defendant. | Civil Action No.18-cv-00897 (KAD)<br><br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

　　　　Defendant, Medguard Alert, Inc., by and through its undersigned counsel, states the following in support of its Motion for Summary Judgment pursuant to FRCP R. 56.

### I.　　PRELIMINARY STATEMENT

　　　　Defendant, Medguard Alert, Inc. ("MedGuard") is a Connecticut corporation that provides medical monitoring services.[1] Plaintiff is a "serial" professional litigant who has filed dozens of TCPA lawsuits.[2] According to plaintiff's Complaint, he received an allegedly violative telemarketing call to his cell phone.[3] Based on this factual predicate, Plaintiff asserts a single cause of action, purportedly under 47 U.S.C. §227 (b) (3).[4]

　　　　Pursuant to the Court's Scheduling Order, a motion for class certification was due on or before August 16, 2019. (Doc. 19). While Plaintiff's Complaint is captioned as a putative class action, Plaintiff opted not to file a class certification motion. Accordingly, this case involves only an individual claim regarding a single telemarketing call.

　　　　As set forth below, summary judgment must be granted because Cunningham cannot meet his burden to prove the elements of his claims. Undisputed record evidence shows that

---

[1] Statement of Facts ("SOF"), Paragraph 3.
[2] *Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1191-1196 (M.D. Tenn. 2017).
[3] SOF, Paragraph 1.
[4] SOF, Paragraph 2.

MedGuard purchased customer accounts from non-party Lifewatch, Inc., which had entered into a purchase agreement with an outside sales company that engaged in telemarketing.[5] Even if, *arguendo*, non-party Lifewatch's outside sales company -- Kimrain Marketing LLC -- called Cunningham, no competent evidence has been adduced that: 1) MedGuard initiated the call; or, 2) MedGuard supervised or controlled the manner and means of telemarketing by non-party Lifewatch Inc.'s outside sales company.   Accordingly, summary judgment must be granted.

## II.     LEGAL ARGUMENT

### 1. Defendants are Neither Directly Nor Vicariously Liable Under the TCPA

Cunningham alleges that he received a call that contravened the TCPA.[6]  The TCPA and its implementing rules and regulations prohibit an entity from making a call using an automatic telephone dialing system or an artificial or prerecorded voice to a cellular phone or a residential phone line without the "prior express consent" of the recipient. 47 U.S.C. § 227(b)(1)(A)(iii); *see also* 47 C.F.R. § 64.1200(a)(1)(iii).

### a. Defendant is not Directly Liable for the Allegedly Violative Call

Direct liability under the TCPA applies only to entities that "initiate" a call. *Smith v. State Farm Mut. Auto. Ins. Co.,* No. 13-cv-2018, 2014 WL 3906923, at *3 (N.D. Ill. Aug. 11, 2014), citing *In re Joint Petition filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6582 (2013).  A person or entity "initiates" a call "when it takes steps necessary to physically place a telephone call." *Dish Network, LLC*, 28 F.C.C.R. at 6583.  In the case at bar, undisputed evidence indicates that defendants did not initiate the offending call that Cunningham allegedly received.[7]   As such, defendant cannot be held directly liable.

---

[5] SOF Paragraphs 6; 8.
[6] SOF, Paragraph 1-2.
[7] SOF, Paragraph 4.

**b. <u>Defendant is not Vicariously Liable for the Allegedly Violative Call</u>**

Given plaintiff's inability to demonstrate direct liability, plaintiff's case hinges upon a vicarious liability theory. But, Cunningham cannot show through any admissible evidence that the entity that called him had an agency relationship with MedGuard such that MedGuard can be held vicariously liable.

While the TCPA is silent as to vicarious liability, district courts within the 2nd Circuit have endorsed the view that the TCPA imposes vicarious liability where an agency relationship, as defined by federal common law, is established between a defendant and a third-party caller. *See Jenkins v. Nat'l Grid USA*, No. 15-CV-1219(JS)(GRB), 2016 U.S. Dist. LEXIS 46095 (E.D.N.Y. Mar. 31, 2016). In doing so, courts have pointed to a 2013 FCC Order, which stated that a third-party may be liable under the TCPA for acts of another under agency principles, *i.e.* formal agency, apparent authority, and ratification. *Id.*, at *4; *Dish Network, LLC*, 28 F.C.C.R. at 6584.

And, in evaluating whether a defendant can be vicariously liable under the federal common law of agency, courts throughout the country, including courts within the 2nd Circuit, look to the Restatement of Agency. *See Jenkins* 2016 U.S. Dist. LEXIS 46095 (E.D.N.Y. Mar. 31, 2016); *see also Doe I v. Unocal Corp.*, 395 F.3d 932, 972 (9th Cir. 2002) ("The general principles of the federal common law of agency have been formulated largely based on the Restatement of Agency."). As demonstrated below, Defendant cannot be held vicariously liable for the allegedly offending call that Cunningham received from another entity under any theory of agency.

### c. There is no Formal Agency for the Allegedly Violative Calls

Agency is the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to so act. Restatement (Third) Of Agency § 1.01 (2006). An agent is one who "act[s] on the principal's behalf and subject to the principal's control." *United States v. Bonds*, 608 F.3d 495, 506 (9th Cir. 2010), citing Restatement (Third) Of Agency § 1.01.)

In *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079 (C.D. Cal. 2012) ("*Taco Bell I*"), *aff'd*, No. 12-56458, 2014 WL 2959160 (9th Cir. July 2, 2014), the district court found that for a plaintiff to succeed on a vicarious liability theory in a TCPA action, he or she must demonstrate that the entities directly involved in the violative communications acted as an agent of the defendant, *i.e.*, that the defendant controlled "the manner and means of the…campaign they conducted." *Taco Bell I*, 879 F. Supp. 2d at 1084-85, citing *Bonds,* 608 F.3d at 506; *Klee v. United States,* 53 F.2d 58, 61 (9th Cir. 1931) ("Agency means more than mere passive permission; it involves request, instruction, or command."). In *Taco Bell I*, the district court found that plaintiff did not present any evidence that Taco Bell "directed or supervised the manner and means" of the campaign conducted by others; "created or developed the communication," or "played any role in the decision to distribute the [communication]." *Taco Bell I*, 879 F. Supp. 2d at 1085. Based on these findings, the district court entered judgment in favor of *Taco Bell*. *Id.* at 1085-86.

In the case at bar, as in *Taco Bell I,* Plaintiff cannot present any evidence that Defendant "directed or supervised the manner and means" of the offending telemarketing call. Nor can Plaintiff show that Defendant "created or developed" the offending communication, or that it

"played any role in the decision to distribute the offending message." The record evidence shows only that MedGuard purchased customer accounts from non-party Lifewatch, Inc., which appears to have authorized its outside sales companies to originate customer accounts for sale to Lifewatch through practices that were compliant with state and federal laws, including the TCPA.[8] Even if Plaintiff could show that non-party Lifewatch, Inc. directed or supervised its outside sales company -- which Plaintiff cannot -- Plaintiff would still have to show that MedGuard directed or supervised the non-party Lifewatch and the non-party outside sales company with respect to the telemarketing call to Plaintiff. Plaintiff cannot meet this burden.

      Here, non-party Lifewatch's outside sales company explicitly warranted and covenanted to Lifewatch that the outside sales companies would not sell customer accounts that originated through violative telemarketing practices.[9] And, there is no evidence that MedGuard directed or controlled the means and methods of telemarketing or participated in creating automated telephonic marketing messages. Indeed, the evidence shows the opposite.[10] As such, there can be no agency finding. *See, e.g. Kristensen v. Credit Payment Servs. Inc.*, 2015 U.S. Dist. LEXIS 96036 (D. Nev. July 20, 2015) ("Here, other than the mere fact that Click Media may have known that AC Referral used texts to generate leads, it is undisputed that Click Media had almost no input or control regarding the content, means of transmission, or methods used by AC Referral to carry out its texting campaign. Other than the most basic parameters contained in their insertion orders, e.g. AC Referral had to comply with relevant laws, Click Media did not control the instrumentalities, tools, or offices of AC Referral. Plaintiffs'… argument thus fails."); . *Makaron v. GE Sec. Mfg.*, 2015 U.S. Dist. LEXIS 75240, *19 (C.D. Cal. May 18, 2015) (Granting summary judgment and holding "there is no evidence that UTCFSA controlled or

---

[8] SOF Paragraphs 6-9.
[9] SOF Paragraph 9.
[10] SOF Paragraph 5; 11.

directed the marketing campaigns of its authorized dealers, much less the specific marketing campaigns that targeted Plaintiffs in this case. In fact, it would be unreasonable to hold that UTCFSA controlled how its authorized dealers sold their products, given that the authorized dealers could and did sell security products from other brands and manufacturers.").

### d. There is no Actual Authority for the Allegedly Violative Calls

An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act. The traditional agency test requires establishing: "(1) a manifestation by the principal that the agent shall act for him; (2) that the agent has accepted the undertaking; and (3) that there is an understanding between the parties that the principal is to be in control of the undertaking." *Makaron v. GE Sec. Mfg.*, 2015 U.S. Dist. LEXIS 75240, *16-17 (C.D. Cal. May 18, 2015). Moreover, "actual authority consists of powers which a principal directly confers upon an agent, as well as those the principal causes or permits the agent to believe he or she possess." *In re Fresh & Process Potatoes Antitrust Litig.,* 834 F. Supp. 2d 1141, 1167–68 (D. Idaho 2011), citing 2A C.J.S. Agency § 133; Restatement (Third) of Agency § 2.01 (2006). *See also Keating v. Peterson's Nelnet, LLC*, 2014 U.S. Dist. LEXIS 64920 at *5 (N.D. Ohio May 12, 2014), ("A principal may be vicariously liable for an agent's tortious conduct if the agent had actual authority from the principal for the conduct"), citing *Jones v. Federated Fin. Reserve Corp.,* 144 F.3d 961, 965 (6th Cir. 1998).

Here, there is no competent evidence that MedGuard permitted non-party Lifewatch's outside sales company to act on MedGuard's behalf or took any actions that would lead Lifewatch's outside sales company to believe that it had authority to do so.[11]

---

[11] *Id.*

e. **<u>There is no Apparent Authority for the Allegedly Violative Calls</u>**

Apparent authority focuses on third parties. It arises when a third party reasonably believes that the putative agent had authority to act on behalf of the principal and that belief can be traced to the principal's own manifestations. *In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d at 1167–68 (citations omitted); *see also Palm Beach Golf Ctr.–Boca, Inc. v. Sarris*, No. 12-80178, 2013 WL 5972173, at *10 (S.D. Fla. 2013) ("The Restatement forthrightly provides that '[a]pparent authority is not present when a third party [Plaintiff] believes that an interaction is with an actor who is a principal.'") (quoting Restatement (Third) of Agency § 2.03(f)) (alteration in original). Apparent authority can only "be established by proof of something said or done ***by the [alleged principal]****,* on which [the plaintiff] reasonably relied." *NLRB v. Dist. Council of Iron Workers of Cal. & Vicinity*, 124 F.3d 1094, 1099 (9th Cir. 1997).

As observed in *Makaron v. GE Sec. Mfg.*, 2015 U.S. Dist. LEXIS 75240 (C.D. Cal. May 18, 2015):

> Apparent authority arises from the principal's manifestations to a third party that supplies a reasonable basis for that party to believe that the principal has authorized the alleged agent to do the act in question. [T]he ostensible authority of an agent cannot be based solely upon the agent's conduct. The third party's belief must not only be reasonable, but also "traceable" to the principal's manifestations. *See* Restatement (Third) of Agency § 2.03 (2006). [Quotation marks and case citations omitted.]

Here, plaintiff has not produced competent evidence from which one could trace his belief as to the callers' apparent authority to Defendant's conduct or statements.

f. **<u>Defendants did not Ratify the Allegedly Violative Calls</u>**

"Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement (Third) of Agency § 4.01(1) (2006). "Although a principal is liable when it ratifies an originally unauthorized tort, the

principal-agent relationship is still a requisite, and ratification can have no meaning without it."
*Thomas v. Taco Bell Corp.,* 582 F. App'x 678, 680 (9th Cir. 2014).  Here, there is no evidence of a principal-agent relationship and thus there can be no ratification.  Accordingly, Defendants cannot be vicariously liable under a ratification theory.

### III.   CONCLUSION

For the reasons set forth herein, summary judgment must be granted in Defendant' favor.


Dated: New York, New York
December 20, 2019

**The Sultzer Law Group, P.C.**
By:   Joseph Lipari /s/
_____
Joseph Lipari
Attorneys for
MedGuard Alert, Inc.
270 Madison Avenue
New York, NY 10005
Tel:  917-444-1960
Fax: (888) 749-7747


By:/s/ Keith R. Rudzik
Keith R. Rudzik, Esq.
Howard, Kohn, Sprague &
    FitzGerald
237 Buckingham Street
Hartford, Connecticut  06106
(860) 525-3101;
Fed. Bar.No. CT24007
krr@hksflaw.com

## CERTIFICATE OF SERVICE

      I hereby certify that on December 20, 2019, a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing]. Parties may access this filing through the Court's system.

      BY  */s/ Keith R. Rudzik*
Keith R. Rudzik, Esq.
Fed. Bar. #: ct24007
Howard, Kohn, Sprague & FitzGerald LLP
Post Office Box 261798
Hartford, Connecticut  06126-1798
Phone: (860) 525-3101
Fax: (860) 247-5201
E-mail: krr@hksflaw.com